UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE GUADALUPE GUTIERREZ,

    Petitioner,

v.                                           CASE NO:  8:13-cv-2336-T-30EAJ
                                                Crim. Case No: 8:11-cr-313-T-30EAJ

UNITED STATES OF AMERICA,

    Respondent.
_____/

# ORDER

THIS CAUSE comes before the Court upon Petitioner Jose Guadalupe Gutierrez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Doc. 1). The Court having reviewed the pleadings, arguments, and record, and having held an evidentiary hearing, concludes that Gutierrez's motion is due to be denied.

## BACKGROUND

**I. Procedural Background**

Gutierrez was charged and convicted following a jury trial of two counts of carjacking, in violation of 18 U.S.C. § 2119 (Counts 1 & 3), and two counts of possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 2 & 4).  (CR Docs. 1, 42, 54).  Gutierrez was sentenced to 462 months' imprisonment: seventy-eight months on Counts 1 and 3, to run concurrently; eighty-four

months on Count 2, to run consecutively to Counts 1 and 3; and 300 months on Count 4, to run consecutively to Count 2. (CR Doc. 54).

On December 27, 2011, Gutierrez filed a direct appeal, challenging his convictions and sentence and arguing that the record did not support the jury's verdict, the 462-month sentence was unreasonable, and the Court inadequately explained its basis for imposing an unreasonably harsh sentence. (CR Docs. 57, 69). Gutierrez's convictions and sentence were affirmed on October 18, 2012. (CR Doc. 70). He did not seek further review, and timely filed the instant § 2255 petition on September 9, 2013.

On February 28, 2014, Gutierrez's counsel filed a motion seeking to have Gutierrez evaluated for competency to proceed on his § 2255 petition. (CV Doc. 32). The Court granted the motion (CV Doc. 38), and a competency hearing was held on April 29, 2014 (CV Doc. 43). Following the April 29, 2014 competency hearing, the Court found that based upon the psychological evaluation performed by Dr. Michael P. Gamache (CV Doc. 45), further testing and examination over a prolonged period of time was necessary to conclusively determine Gutierrez's competency. (CV Doc. 46). Gutierrez was then transferred to the Federal Detention Center in Miami, Florida, where he was evaluated from June 3, 2014, to July 3, 2014. (CV Doc. 55). A second competency hearing was held on September 18, 2014. (CV Doc. 54). Based on the report and testimony of Dr. Jorge Luis, who conducted the second competency evaluation of Gutierrez, and the other record evidence, the Court found Gutierrez competent to proceed. (CV Doc. 55).

An evidentiary hearing was held on Gutierrez's § 2255 petition on October 2, 2014. (CV Doc. 58). Dionja Dyer, Gutierrez's trial counsel, and FBI Agent John Manning testified at the evidentiary hearing. Gutierrez did not testify.

## II. Factual Background[1]

On January 16, 2011, Thomas Cochill was visiting the mobile home of Billy Wright in Dade City, Florida, to return a borrowed item. (CR Doc. 63 at 31). While Cochill was at Wright's, Courtney McGuire (also known as "Cici"), a woman identified as "Mamie," and Gutierrez were also at Wright's. (*Id.* at 33, 45). Wright and Gutierrez conversed, and Wright asked Cochill to drive Gutierrez to a nearby convenience store. (*Id.* at 33). Cochill agreed, and proceeded to drive himself, Gutierrez, and McGuire to the convenience store in his model-year 2000 Saab. (*Id.* at 33-34).

En route to the store, Gutierrez saw one of his friends walking along the street and asked Cochill to pick him up. (*Id.* at 34). Cochill acquiesced, and the four individuals then continued to the convenience store. (*Id.* at 34). Once they arrived at the convenience store and Cochill parked the vehicle, Gutierrez, who was sitting in the back seat, pulled out a firearm, cocked it, and pointed it at Cochill. (*Id.* at 36-38). Gutierrez announced that he was taking the vehicle and ordered Cochill to get out. (*Id.* at 36). Cochill surrendered his vehicle to Gutierrez and ran into the convenience store to call emergency services for help. (*Id.* at 36, 38). The police arrived at the scene shortly thereafter, and Cochill described the

---

[1]The following facts are from the witness testimony presented at trial.

events that led to the theft of his vehicle. (*Id.* at 38). The next morning, the police located Cochill's vehicle, but it had been totaled in a fire. (*Id.* at 38-40, 59-60).

On February 23, 2011, Derrick Hendley was driving his green Ford Explorer when he saw Gutierrez standing by the side of the road. (*Id.* at 68). He stopped his car to greet him because he thought he recognized him. (*Id.* at 69-70). Gutierrez asked Hendley to drive him to the convenience store to purchase cigarettes, and Hendley agreed. (*Id.* at 70). After going to the convenience store, Hendley drove Gutierrez to the spot where he originally found him, but Gutierrez requested that Hendley take him a few blocks further to a friend's house. (*Id.* at 75). Hendley agreed and drove Gutierrez to a nearby mobile home. (*Id.* at 77).

When they arrived at the mobile home, Gutierrez exited Hendley's vehicle, approached the padlocked door of the mobile home, and put on a pair of gloves. (*Id.* at 77). Gutierrez told Hendley his friend was not home and asked Hendley to drive him somewhere else. (*Id.* at 77-78). Gutierrez then reached into his pocket, pulled out the packet of cigarettes, removed the cellophane wrapper, and dropped the wrapper on the ground. (*Id.* at 78-79). Gutierrez reached into his pocket again and pulled out a firearm. (*Id.* at 78-79). While pointing the firearm at Hendley, Gutierrez demanded that Hendley surrender his vehicle. (*Id.* at 80). Hendley asked Gutierrez not to shoot him or take his vehicle, and Gutierrez fired several shots into the air and threatened to shoot Hendley if he did not get out of his vehicle. (*Id.* at 80). At that point, Hendley started to get out of his vehicle but was still pleading with Gutierrez not to take it. (*Id.* at 80). Gutierrez fired

another shot into the air, and Hendley relinquished his vehicle and fled on foot. (*Id.* at 80-81). Gutierrez fired several more shots into the air. (*Id.* at 81).

Hendley walked home and reported the carjacking to the police. (*Id.* at 84). The police responded to the scene where the carjacking occurred, and recovered a cellophane cigarette-pack wrapper, a bullet, and a spent bullet shell casing outside the mobile home. (CR Doc. 63 at 84-85; CR Doc. 64 at 8-9, 11, 29-30). They also found three spent bullet shell casings in the roadway near the mobile home. (CR Doc. 64 at 22, 25).

Later that day, Florida Highway Patrol Trooper Marcel Garcia, who was on his way to assist another trooper, encountered Hendley's vehicle on Interstate 4 ("I-4"). (*Id.* at 50). Trooper Garcia was traveling in the left-hand lane with his lights activated when he encountered Hendley's vehicle (which he later learned was being driven by Gutierrez). (*Id.* at 50). Instead of changing lanes to allow Trooper Garcia to pass, Gutierrez accelerated, reaching speeds over 100 miles per hour. (*Id.* at 50-51). Trooper Garcia then initiated pursuit of Gutierrez and attempted to stop him. (*Id.* at 51). A high-speed chase ensued. (*Id.* at 51). During the chase, Gutierrez weaved in and out of traffic, cutting off other vehicles, and narrowly avoiding accidents. (*Id.* at 51-52).

Gutierrez then exited I-4 onto a state road but continued fleeing from Trooper Garcia, driving at speeds over 100 miles per hour. (*Id.* at 52-53). After traveling approximately four miles on the state road, Gutierrez veered onto the shoulder of the road and lost control of the vehicle, causing the vehicle to flip. (*Id.* at 53-55). The vehicle rolled down an embankment before coming to rest in the back yard of a residence. (*Id.* at 56-57). When Trooper Garcia exited his vehicle and approached the overturned vehicle, he found

Gutierrez, who had been ejected from the vehicle when it crashed, injured and leaning against a nearby chain-link fence. (*Id.* at 57-58). Due to his injuries, Gutierrez was airlifted to a hospital. (*Id.* at 69).

While searching the debris near the crash, Trooper Garcia found a .40 caliber firearm, later identified as the firearm from which the spent shell casings and bullet found near the mobile home originated, a magazine containing bullets, and a black glove. (*Id.* at 60, 63-67, 77). Trooper Garcia then learned that the car had been stolen earlier that day and that Gutierrez matched the description of the alleged carjacker. (*Id.* at 63). Following Gutierrez's arrest, both Cochill and Hendley identified Gutierrez as the individual who carjacked their vehicles. (CR Doc. 63 at 42-43; CR Doc. 64 at 93).

During a consensual interview with authorities several weeks later, Gutierrez claimed that an unidentified Caucasian woman had rented him Hendley's vehicle for an hour, charging him $25. (CR Doc. 64 at 85). Gutierrez stated that he failed to return the vehicle within the allotted time. (*Id.* at 85).

## **DISCUSSION**

By his petition, Gutierrez raises six grounds for relief, including arguing that his counsel was ineffective for failing to (1) apprise him of trial strategy (Ground 1), (2) object to his sentences to achieve the lowest possible sentence (Ground 2), (3) request a competency hearing (Ground 3), (4) request a special jury verdict regarding brandishing, carrying, or possession of a firearm (Ground 5), and (5) prove that no one was seriously injured during the commission of the offenses (Ground 6). Gutierrez also argues that his

sentence violates the holding of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), (Ground 4).

Ineffective-assistance-of-counsel claims are cognizable under § 2255. *Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (per curiam). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective-assistance-of-counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. *Strickland* requires proof of both deficient performance and consequent prejudice. *Id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds." (internal citations and quotation marks omitted)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Thus, Gutierrez must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To meet this burden, Gutierrez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**GROUND 1: Whether counsel was ineffective for failing to keep Gutierrez apprised of trial strategy.**

First, Gutierrez contends that his trial counsel, Ms. Dyer, failed to consult with him and keep him informed regarding the defense strategy. (CV Doc. 2 at 2-5). Gutierrez's claim, however, is refuted by the record and the evidence provided during the evidentiary hearing. During the evidentiary hearing, Ms. Dyer stated that she met with Gutierrez on seven occasions to discuss the government's evidence, the witnesses and victims, and potential defenses.[2] She also stated that Gutierrez was actively involved in his defense and assisted her by providing information for impeaching witnesses and for developing potential defenses, which included that the carjacking on January 16, 2011, did not occur and that the carjacking on February 23, 2011, was not actually a carjacking. The Court finds Ms. Dyer's testimony credible. Accordingly, the record does not reflect that counsel's performance was deficient in this regard.

---

[2] Likewise, in her affidavit, Ms. Dyer averred that she met with Gutierrez on June 28, 2011; July 15, 2011; July 20, 2011; July 28, 2011; August 16, 2011; September 13, 2011; and September 29, 2011. (CV Doc. 20 at 2).

Even had counsel's performance been deficient, Gutierrez has failed to establish that this deficiency resulted in prejudice. Gutierrez does not take issue with the defense strategy utilized by Ms. Dyer, and he does not offer an alternative strategy that would have been more successful. As such, Gutierrez is not entitled to relief on Ground 1.

**GROUND 2: Whether counsel was ineffective for failing to object to Gutierrez's sentence.**

Next, Gutierrez argues that Ms. Dyer was deficient for failing to object to his sentence because the enhancements for use of a firearm under 18 U.S.C. § 924(c) should have been applied in the order that would have produced the lowest sentence. (CV Doc. 2 at 5-6). Gutierrez also argues that the rule of lenity should apply to his sentence because § 924(c)(1)(C) is ambiguous. (*Id.* at 6).

First, § 924(c)(1)(C) is not ambiguous. The rule of lenity applies only if a court is required to interpret an ambiguous statute. *United States v. James*, 986 F.2d 441, 444 (11th Cir. 1993). In pertinent part, § 924(c)(1) provides,

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years; [and] . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

18 U.S.C. § 924(c)(1)(A)(i)-(ii). The statute further provides that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." *Id.* at § 924(c)(1)(C)(i). And,

9

"[n]otwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." *Id.* at § 924(c)(1)(D)(ii). Reading § 924(c)(1) in its entirety makes it clear that § 924(c)(1)(C) is not ambiguous, and, therefore, the rule of lenity does not apply.

Ms. Dyer's failure to object to Gutierrez's sentence on this ground does not constitute deficient performance. Gutierrez was sentenced to the *minimum* sentences for his two firearm convictions as statutorily mandated. He received seven years' imprisonment on the first conviction and twenty-five years' imprisonment on the second conviction. *See id.* at § 924(c)(1)(A)(ii), (C)(i). And the sentences were imposed consecutively to the carjacking sentences and to each other, also as statutorily mandated. *See id.* at § 924(c)(1)(D)(ii). Gutierrez argues that the Court should not have imposed the sentences chronologically; but this argument is nonsensical because regardless of the order in which the sentences were imposed, the overall length of the sentence would have remained the same. On the firearm convictions, Gutierrez could not have received a more favorable sentence than that imposed by the Court. Any argument made by Ms. Dyer to the contrary would have been futile. The failure to raise a nonmeritorious objection does not constitute ineffective assistance of counsel. *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002).

In any event, prior to imposition of the sentence, Ms. Dyer argued for the lowest sentence legally possible for Gutierrez. Namely, during the sentencing hearing, Ms. Dyer argued before the Court,

> Obviously, Mr. Gutierrez went to trial in this case, and the Court heard from the victims of the two carjackings. I'd just like to point out that he's 19 years old.
> Based on the information in the presentence report, it's obvious that he had an abusive childhood. He has unresolved anger issues as a result, and he has had a significant drug problem since the age of 15, to include most recently methamphetamine.
> The mandatory minimum in this case, based on the two gun charges, is 32 years. At the age of 19, I would submit that being sentenced to prison for the very first time until you're 50 years old is going to have a significant impact on him. It obviously will allow enough time for him, hopefully, to address all of the issues that he has from childhood that have caused him to be in trouble since a very young age.
> Obviously, he will be on supervised release when he eventually gets out, and he can continue with any type of counseling or treatment that is necessary to protect the community and to hopefully have a productive life.
> So, what we're asking the Court to do is to agree that 32 years' imprisonment, when no one was injured -- yes, there was some psychological fear imposed on these gentlemen, and I believe they testified to that, but no one was actually injured, and definitely no one was killed. Thirty-two years at the age of 19 is sufficient sentence in this case, so time served on Counts 1 and 3 followed by the mandatory seven and 25 years on Counts 2 and 4, respectively, is sufficient under all of the 3553 concerns.

(CR Doc. 65 at 5-6). Gutierrez received a sentence below the statutory maximum although he could have received a higher sentence based on the guidelines. (*See* PSR at 17). Because Ms. Dyer argued for the lowest sentence possible, Gutierrez cannot establish that Ms. Dyer's failure to raise a futile argument resulted in prejudice. And, Gutierrez has not established a reasonable probability that had Ms. Dyer raised some other objection that the outcome of his sentence would have been different. Thus, Gutierrez is not entitled to relief on Ground 2.

**GROUND 3: Whether counsel was ineffective for failing to request a competency evaluation prior to trial.**

Gutierrez argues that Ms. Dyer was ineffective for failing to request a competency evaluation for him prior to trial. (CV Doc. 2 at 7-9). Gutierrez contends that he has a low intelligence quotient ("IQ") and did not understand the legal process and his trial and that Ms. Dyer should have recognized this deficiency and investigated it further. (*Id.* at 9).

A defendant is competent if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). In considering whether counsel was ineffective for failing to investigate a defendant's competency, counsel's decision is reviewed for reasonableness in light of the totality of the circumstances surrounding the decision. *Williams v. Head*, 185 F.3d 1223, 1236 (11th Cir. 1999). Moreover, counsel's decisions are entitled to a "heavy measure of deference." *Strickland*, 466 U.S. at 691.

First, beyond mere conclusory allegations, Gutierrez provides no evidence that, prior to or at trial, he was incompetent. No prior records exist that indicate that at the time of trial Gutierrez was incompetent or suffered from some type of mental deficiency.[3] Gutierrez contends that an incident that occurred when he was a child in which he allegedly

---

[3]In contrast to Gutierrez's contentions, Georgia Whitlock, the Chief Psychologist at the federal prison where Gutierrez was initially detained, averred that when Gutierrez was evaluated at a routine intake screening on February 2, 2012, his psychological stability was favorable. (CV Doc. 21). Although her opinion does not directly reflect the state of Gutierrez's competency at the time of trial, it is still persuasive as Gutierrez indicates that his incompetency was the result of an ongoing condition, i.e., below-average intelligence. (CV Doc. 22 at 9).

suffered from a seizure and coma should have caused Ms. Dyer to investigate his competency further. However, although Ms. Dyer stated that she learned about the incident from Gutierrez, based on her interactions with him, she did not believe that it impacted his competency.[4]

Second, Gutierrez does not allege that he informed Ms. Dyer at any point that he had mental deficiencies or that he did not understand what was going on or the legal process. *See Funchess v. Wainwright*, 772 F.2d 683, 689 (11th Cir. 1985) (concluding that counsel was not ineffective for failing to investigate the defendant's contentions of "extreme mental and emotional disturbance" because the defendant never informed his counsel of any past psychological problems and recent evaluations did not contain any indicators that the defendant had a history of psychological problems). In fact, Ms. Dyer testified that she discussed the charges, including their seriousness, potential penalties, trial, and pleas with Gutierrez and he seemed to understand and comprehend, and he never expressed to her that he had difficulty understanding. She also testified that Gutierrez was actively involved in preparing the case for trial and provided much of the information used to cross examine the witnesses.

The only evidence to indicate that Ms. Dyer had any questions as to Gutierrez's competency is one note contained in her file from her first meeting with Gutierrez, which states "?Eval?" During the evidentiary hearing, Ms. Dyer testified that she could not recall

---

[4] Notably, Gutierrez underwent a competency evaluation related to his competency to proceed in this § 2255 proceeding, and the doctor who found him competent to proceed, Dr. Luis, opined that this incident did not appear to have a long-term effect on Gutierrez. (CV Doc. 56 at 37-38).

13

the reason she wrote that note in her file and then did not pursue an evaluation, but she stated that she could deduce from her notes that further meetings with Gutierrez and investigation of the potential defenses quelled her concern that Gutierrez required a competency evaluation.[5]

While the evidence of record indicates that Ms. Dyer may have originally had a question as to Gutierrez's competency, further interaction with him alleviated this concern. The Court concludes that Ms. Dyer's decision not to investigate Gutierrez's competency further by seeking an evaluation was reasonable based on the circumstances known to her at that time and Gutierrez's failure to indicate at any point in the proceedings that he did not understand what was going on. Accordingly, Ms. Dyer's decision not to have Gutierrez evaluated for competency does not constitute ineffective assistance of counsel.

Moreover, Gutierrez does not present any evidence that he did not understand the legal proceedings. In fact, he did not testify at the evidentiary hearing and he made no showing that a competency evaluation would have changed the outcome of the proceedings. He has provided no evidence beyond mere allegations that he was not competent to stand trial. And having a low IQ or mental deficiency does not necessarily mean that Gutierrez was incompetent to stand trial. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]either low intelligence, mental deficiency, nor bizarre,

---

[5] Evidence garnered after Gutierrez's trial also indicates that his contentions may not have been entirely credible. For example, while incarcerated, Gutierrez received his general equivalency diploma and completed a drug education program. (CV Doc. 56 at 38). Such accomplishments are at odds with his allegation that he had a very low IQ.

14

volatile, and irrational behavior can be equated with mental incompetence to stand trial."). As such, Gutierrez is not entitled to relief on Ground 3.

**GROUNDS 4 and 5: Whether Gutierrez's sentence was imposed in violation of *Alleyne v. United States*, 133 S. Ct. 2151, and whether counsel was ineffective for failing to request a special jury verdict as to whether Gutierrez brandished, carried, or possessed a firearm during the commission of the offenses.[6]**

In Ground 4, Gutierrez argues that his sentence violates the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151. (CV Doc. 2 at 9-10). In Ground 5, Gutierrez contends that, pursuant to *Alleyne*, Ms. Dyer was ineffective for failing to request a special jury verdict regarding brandishing, carrying, or possessing a firearm. (*Id.* at 10-11).

In *Alleyne*, the Supreme Court held that the finding of whether a defendant brandished a firearm in connection with a crime of violence to support the enhanced sentence under § 924(c)(1)(A)(ii), was an element of a separate, aggravated offense that had to be made by the jury. 133 S. Ct. at 2162-63. Although *Alleyne* would apply to Gutierrez if he was sentenced today, Gutierrez's arguments under Grounds 4 and 5 fail because *Alleyne* was decided after Gutierrez was sentenced (and after he received an unfavorable decision on appeal), and the *Alleyne* rule does not apply retroactively on collateral review. *See Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285-86 (11th Cir. 2014).

Gutierrez's argument on Ground 5 also fails because counsel cannot be deemed ineffective for failing to anticipate a change in the law. *See Black v. United States*, 373

---

[6]Because these two grounds are related, the Court will discuss them simultaneously.

15

F.3d 1140, 1146 (11th Cir. 2004); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) ("[I]t is not ineffective assistance for an attorney to fail to foresee a change in the law . . . even when the change is such that the forfeited issue was, in hindsight, a sure fire winner."). Gutierrez argues that, under *Alleyne*, Ms. Dyer should have argued that the jury verdict form should have included a question regarding whether Gutierrez brandished, carried, or possessed a firearm during the offense. Prior to the Court's decision in *Alleyne*, however, *Harris v. United States*, 536 U.S. 545, 568 (2002), allowed the Court to increase the minimum mandatory sentence without a factual finding from the jury. Thus, *Alleyne* constituted a departure from prior precedent. Because it would be unreasonable to expect Ms. Dyer to predict this change, her performance was not deficient.

Further, Gutierrez cannot establish that the failure to include the question on the verdict form resulted in prejudice because the evidence at trial established that he brandished a firearm during the commission of both carjackings. Brandish means to "display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4). Cochill testified that on January 16, 2011, while he was giving Gutierrez a ride, Gutierrez pulled out a gun, pointed it at him, and cocked it. (CR Doc. 63 at 36-38). Cochill stated that Gutierrez then ordered him to get out of the vehicle and announced that he was taking it. (*Id.* at 36). Similarly, Hendley testified that on February 23, 2011, after giving Gutierrez a ride, Gutierrez pulled a gun out of his pocket and pointed it at Hendley. (*Id.* at 78-79). Gutierrez demanded that Hendley surrender his vehicle, fired several shots into the air, and threatened to shoot

16

Hendley if he did not relinquish his vehicle. (*Id.* at 80). Gutierrez did not proffer any evidence to dispute the testimony of Cochill and Hendley, and he does not currently allege that Cochill's and Hendley's testimony was not credible.

Accordingly, Gutierrez has also failed to establish that counsel's failure to argue for inclusion of the additional question on the verdict form would have altered the outcome of the proceedings. Gutierrez has not raised a meritorious argument under either Ground 4 or Ground 5 and he is not entitled to relief.

**GROUND 6: Whether counsel was ineffective for failing to prove that no one was seriously injured during the commission of the carjackings.**

Last, Gutierrez contends that his counsel was ineffective for failing to prove that no one was seriously injured during the commission of the carjackings because it would have negated an element of the offense. (CV Doc. 2 at 11-12). Specifically, Gutierrez argues that under 18 U.S.C. § 2119, the government was required to prove that Gutierrez had the intent to kill or inflict serious bodily harm, and, therefore, failing to present evidence to the contrary constituted deficient performance by Ms. Dyer. (*Id.* at 11).

First, Gutierrez is mistaken in his argument that the lack of bodily injury to the victims was conclusive proof that he did not intend to kill or inflict serious bodily harm. And, more importantly, circumstantial evidence was presented at trial from which this intent could be inferred.[7] Second, that no one was injured or killed was evident from the

---

[7]To the extent Gutierrez attempts to argue that insufficient evidence existed on which to convict him of carjacking under 18 U.S.C. § 2119, such a claim is more appropriate for direct appeal. (CV Doc. 22 at 12). And, indeed, Gutierrez raised this argument in his direct appeal before the Eleventh Circuit, and it found that

evidence presented at trial. Both victims testified and neither victim indicated that they were injured or seriously harmed by Gutierrez. Finally, Gutierrez does not suggest any specific evidence, such as witness testimony, that Ms. Dyer failed to present. As such, Ms. Dyer's performance fell well within the range of competent representation, and Gutierrez is not entitled to relief on Ground 6.

## **CONCLUSION**

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Doc. 1) is DENIED.

2. The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3. The Clerk is directed to terminate from pending status the motion to vacate found at Doc. 71 in the underlying criminal case, case number 8:11-cr-313-T-30EAJ.

---

[t]he evidence as a whole is sufficient to support Mr. Gutierrez's convictions. The government presented testimony from two victims who averred that Mr. Gutierrez took their cars at gunpoint, from an officer who apprehended Mr. Gutierrez after a high-speed chase (and a collision) involving one of the carjacked vehicles, from other officers who talked to the victims and collected crime-scene evidence, and from an analyst who matched spent shell casings found at the scene of one carjacking to a gun found in the "debris field" of the wreckage after Mr. Gutierrez's unsuccessful attempt to evade police in one of the carjacked vehicles. That evidence, when combined with the parties' stipulation that the carjacked vehicles had moved in interstate commerce, is enough to support the jury's verdict.

*United States v. Gutierrez*, 489 Fed. App'x 370, 372-73 (11th Cir. 2012).

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL
### IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Gutierrez is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Gutierrez "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). Gutierrez has not made the requisite showing in these circumstances.

Finally, because Gutierrez is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida on this 18th day of November, 2014.

_JAMES S. MOODY, JR._
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record